UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JENNIFER CICCONE, individually
and on behalf of all others similarly
situated,

    Plaintiff,

v.

PREFERRED APARTMENT
COMMUNITIES, INC.,

    Defendant.
_____/

CASE NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS COMPLAINT

1. Defendant Preferred Apartment Communities, Inc. owns and operates private student housing communities at or near colleges and universities throughout Florida, including The Retreat at Orlando next to the University of Central Florida, where Plaintiff, Jennifer Ciccone, leased an apartment. The core offering of these apartments are the preferred student housing community including its leading resident life program offering a variety of educational, recreational, and social activities, clubhouse with social events, fitness center, technology center with computer stations, multiple sporting courts, sauna, club room with pool tables and coffee bar, golf simulator and close ties to the universities.

2. As a result of the COVID-19 pandemic, universities throughout Florida and the nation have ordered university campuses be vacated to preserve the safety of the students and the public. At university-run facilities, students have been asked to evacuate include dormitories similar in social layout to the facilities operated by the Defendant, which were recognized as unsafe due to the elevated risk of disease transmission inherent to high-density housing with extensive shared common areas. Furthermore, these universities, recognizing that it would be

inequitable and improper to charge students for housing that became unsafe to occupy, have been refunding housing money to students and their families.

3.    In contrast to the responsible actions of the universities, the Defendant, an investment company focusing on "student housing properties," is retaining all funds that their tenants have paid — and continues to demand payment from those who pay month-to-month — for room, board, and other services and amenities, even though the Defendant cannot safely provide them and the students have moved out.

4.    Plaintiff brings this action on her own behalf and on behalf of a class of persons who executed Lease Agreements with the Defendant but are not receiving the bargained-for services.

## PARTIES

5.    Plaintiff Jennifer Ciccone is a citizen of Florida, residing in Coral Springs. Ms. Ciccone is a current guarantor and co-signer for her daughter's room at The Retreat at Orlando for the Fall 2019-Summer 2020 academic school year.

6.    Defendant is a Georgia corporation headquartered in Atlanta. Defendant is the owner of dorm-like student housing apartment complexes, with 6,095 individual student leases for "student housing," throughout the United States. Defendant touts itself as "[a] real estate investment trust engaged primarily in the ownership and operation of high quality multifamily properties, with select investments in grocery anchored shopping centers, Class A office buildings, and student housing properties". Defendant operates at least 2 locations with 1,573 individual student leases in Florida.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000, exclusive of interest and costs, and most members of the proposed Class are citizens of the state of Florida.

8. This Court has general jurisdiction over Defendant, which conducts substantial business within Florida, and thus has significant, continuous, and pervasive contacts with the State.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the challenged fee practices have been committed in this District, Plaintiff suffered the alleged harm in this District and Plaintiff resides in this District.

## FACTS COMMON TO THE CLASS

**A. Defendant Advertises and Sells "Student Housing" to College Students.**

10. Student housing is in high demand at the University of Central Florida and nearby colleges. Students may choose to live in college-owned dormitories or private off-campus apartments. The Retreat at Orlando, owned by Defendant, offers a third option — a "preferred student living community in Orlando, Florida, serving attendees of the University of Central Florida."

11. Defendant advertises its preferred student living community to its target demographic — college students — and touts amenities specifically geared to them, such as on-site leading resident life programs offering a variety of educational, recreational, and social activities, clubhouse with social events, fitness center, technology center with computer stations, multiple sporting activity courts, sauna, club room with pool tables and coffee bar, golf simulator and close ties to the universities.

12. Defendant issued a letter to its student housing residents on March 13, 2020 indicating PAC (Preferred Apartment Communities) "**will be closing all fitness centers and other inside amenity spaces**" and "for the foreseeable future, PAC service team members will only be performing emergency maintenance repairs in occupied units".

13. A second letter was issued from the Defendant on March 18, 2020 recognizing that social distancing is the most effective method we can currently utilize to slow the spread of virus as advised by the Center for Disease Control (CDC) and the World Health Organization (WHO) stating, effective March 19, 2020, "we will temporarily be closing the doors of our community office to in-person traffic and will use alternative methods of communication to include telephone, email, resident portal and website for all resident and prospect needs." Defendant also emphasized "[a]s a reminder, **our fitness centers, pools and other non-essential amenity spaces will remain closed until further notice** and our service teams will only be performing emergency services requests in occupied apartments."

### B. Allegations Regarding Plaintiff Jennifer Ciccone

14. Jennifer Ciccone's daughter, Madison Ciccone, is a student at the University of Central Florida. Plaintiff evaluated the available housing options and selected The Retreat at Orlando based largely on its student housing amenities.

15. Plaintiff Jennifer Ciccone executed a housing contract for August 17, 2019 to July 31, 2020 and Madison Ciccone moved into the dormitory on August 17, 2019 for Fall 2019, Spring and Summer 2020 school semesters.

16. Plaintiff Jennifer Ciccone returned home in March 2020 as directed by the University of Central Florida, the Florida Governor and the President of the United States.

17. Defendant refuses to return pro-rated monies paid for the month of March although this money was collected for services Defendant did not and could not perform.

18. Plaintiff has always paid her monthly installments of $810.00. Her contract is for August 17, 2019 to July 31, 2020 and she paid on time every month.

19. Since the COVID-19 pandemic hit and students were forced to evacuate the premises in March 2020.

20. Defendant feigns concern over the plight COVID-19 put students and their families in while at the same time is haranguing and harassing Plaintiff and her daughter concerning a debt that they do not owe.

21. Defendant collected rent for the month of March, April, May, and June 2020 although Plaintiff and her daughter do not owe these debts.

22. Defendant refuses to return monies paid for March (partial), April, May, and June 2020, although this money was collected for services Defendant did not and could not perform.

**C. University Campuses Shut Down in Response to the COVID-19 Pandemic, and Defendant Cannot Provide the Bargained-For Services.**

23. On March 9, 2020 Florida Governor Ron DeSantis issued Executive Order 20-52 declaring a state of emergency for the entire state of Florida a result of COVID-19.

24. On March 13, 2020, President Donald Trump issued a Proclamation Declaring a National Emergency based upon the COVID-19 outbreak.

25. On March 16, 2020, President Trump and the Center for Disease Control and Prevention ("CDC") issued the "15 days to slow the spread" guidance to slow the spread of the virus, advising individuals of social distancing measures such as avoiding gatherings of more than 10 people, and recommending restrictions for establishments tending to attract mass gatherings and congregations.

26. On March 17, 2020, the University of Central Florida announced that all classes would transition to remote learning through the end of the Spring 2020 semester, canceling all on-campus events due to the COVID-19 pandemic.

27. On March 19, 2020, the University of Central Florida encouraged all residential students to evacuate to their permanent residence and not return to campus, such that they had no meaningful choice but to comply.

28. Further, because all classes were moved online, there was no reason for students to remain near campus if they had other housing available to them. **This is particularly so in the face of the dangers, risks, and fear associated with the pandemic.**

29. The vast majority of students left campus to be with their families, and to avoid exposure to COVID-19, and they have stayed off campus to comply with directives from the schools, as well as local, state and federal governments.

30. On March 24, 2020, Governor DeSantis issued Executive Order 20-83, directing the State Surgeon General and State Health Officer to issue a public health advisory urging the public to avoid all social or recreational gatherings of 10 or more people, stating "it is necessary and appropriate to take action to ensure that the spread of COVID-19 is slowed, and that residents and visitors in Florida remain safe and secure."

31. On March 26, 2020, The Retreat at Orlando issued a statement to its residents and guarantors that they are aware of the impact the pandemic is having on all aspects of everyone's lives and the cancellations and shutdowns in connection with this pandemic have created new burdens on our residents and guarantors. Furthermore, stating, "[a]lthough we are sympathetic to this situation and the hardship that this pandemic has caused, we are unable to change the terms of our Lease Agreement." Please see Exhibit A attached hereto.

32. On March 27, 2020, the University of Central Florida, recognizing that on-campus dormitory rooms, meal plans, and services could not be safely used by the students, the University's Board of Trustees unanimously approved a plan to refund housing costs to students. The refunds were to include students' housing costs from March 27, 2020 through April 28, 2020.

33. On March 29, 2020 President Trump extended the guidelines to be in effect until April 30, 2020.

34. On March 31, 2020 the President updated the guidelines renaming it "30 Days to Slow the Spread" and along with the Coronavirus Task Force urged Americans to adhere to the guidelines.

35. On March 31, 2020, the University of Central Florida issued a statement to all Off-Campus Student Housing Managers advising the shift to all classes online for the spring and portion of the summer semesters and as such depopulated campus and requesting students to return to their permanent residences. Furthermore, respectfully requesting apartment and housing managers to consider granting early lease terminations.

36. Despite the fact that the dormitories cannot safely be occupied by the students, and the fact that the bargained-for amenities could not safely be provided, the Defendant has refused to return any portion of the rent and other fees it has collected.

37. Defendant's demand for payment and refusal to provide partial refunds defies equity, common sense and is in diametrical opposition to the Governor and President's directives concerning the dangers of staying in their facilities.

38. The purpose of the parties' lease agreement was to provide housing and services – including on-site leading resident life program offering a variety of educational, recreational, and social activities, clubhouse with social events, fitness center, technology center with computer

stations, multiple sport courts, sauna, club room with pool tables and coffee bar as well as a golf simulator.

39. Defendant touts in its promotional materials that the amenities are cutting-edge features and unrivaled, which far exceed those of typical student apartments, with leading residence life offering a variety of educational, recreational, and social activities to help your student make the most of their college experience.

40. This purpose was frustrated when the campus closed and students were ordered home no longer attending on-campus classes.

## CLASS ALLEGATIONS

41. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) as a representative of the following Class:

> All people who paid the costs rent and fees for and on behalf of students residing in Defendant's Florida "campus living" complexes for the Spring and Summer 2020 semester who moved out prior to the completion of the semester because of school closures relating to COVID-19.

42. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues, as discovery and the orders of this Court warrant.

43. Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of Defendant's immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest.

44. Plaintiffs are members of the Class they seek to represent.

45. Defendant has thousands of customers that have paid room, rent and fees while schools were closed, and students ordered to return home. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

46. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant has refused to offer refunds and whether it has breached its contracts with its customers or otherwise acted unlawfully.

47. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was charged rental fees and suffered losses despite their child being ordered to leave campus and return home by school and government officials.

48. Plaintiff is an adequate representative of the Class because Plaintiff's interest does not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent counsel experienced in prosecuting class actions, and Plaintiff intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and their counsel.

49. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

## COUNT I
## RESCISSION

50. Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

51. Plaintiff, as well as all other Class members, were in contractual privity with the Defendant as tenants of the Defendant's facilities. These contractual agreements involving the Class members and Defendant were evidenced in writing and signed by the parties.

52. As noted above, the purpose of the contractual undertaking between the Class members (including Plaintiff) and Defendant was to provide a "preferred student living community" living arrangement to student Class members. The living space provided by this arrangement was bundled with a number of amenities and conveniences that particularly catered to students attending university campuses, such as, an exercise center, monthly resident events, computer labs, shuttle services to the campus, and university involvement.

53. There has been a clear "equitable breach" in this case that warrants rescission because issues of "impossibility of performance" and "frustration of purpose" have arisen.

54. As to the "frustration of purpose", Plaintiff executed the contract with the Defendant with the understanding that Defendant was obligated to provide the student Plaintiffs and other student Class members with benefits, to include, but is not limited to access to the resort-

style pool, luxurious clubhouse, fitness center, technology center with computer stations, multiple sports courts, club room with pool tables and coffee bar as well as a golf simulator. Due to Defendant's failure to provide Plaintiff with said benefits Plaintiff was substantially frustrated as the purpose and benefits of the bargain were breached.

55. As to "impossibility of performance," Defendant was obligated to provide the student Plaintiff and other student Class members with access to common areas, fitness center, technology center with computer stations, social activities, and other services. However, as a result of the COVID-19 pandemic, these common areas and services became both unsafe to provide and unsafe to use.

56. To that end, it should be noted that the only private accommodation provided by Defendant, The Retreat at Orlando, was a bedroom and bathroom in a shared apartment. Each living unit had common space shared amongst multiple residents. As such, essential daily living and hygiene functions were necessarily performed in a shared common facility with other students that any individual student might not know well, thus presenting a great risk for COVID-19 infection.

57. Indeed, it is noteworthy that very similar dorm facilities run by the universities were closed down and the students urged to leave because the living arrangements were unsafe to occupy. This was consistent with CDC guidelines which discouraged gatherings of more than 10 people and advised that stringent "social distancing" measures be taken to avoid transmission of COVID-19. However, Defendant, because of its own profits-over-people pecuniary interests, refused to acknowledge that the particular form of high-density housing arrangement that it provided was inconsistent with prudent safety measures.

58. In addition to that, it was simply not possible for students to fully access common areas and amenities in a prudent manner. Places such as the fitness center, transit shuttles, and computer stations would have required student Class members to group together beyond what was prudent. Even the heavily used common hallways presented such a risk.

59. For this reason, it was impossible for the Defendant to provide what was bargained for under the Class members' contracts.

60. As to frustration of purpose, the student-style living arrangement was offered as part of a bundled package of amenities that were a fundamental part of Defendant's performance under the contract. As noted above, Defendant's living facilities and common amenities were rendered unsafe to use as a result of the COVID-19 pandemic. The provision of these living arrangements along with the coupled amenities were the fundamental purpose of the Class members' agreements and became frustrated by the fact that they could not be safely provided or used.

61. In addition to its facilities being unsafe to use, the Defendant marketed its premises as being in close physical proximity to school and also marketed its services as being advantageous because of a high degree of integration with campus university activities. Given that the University campuses were closed, and no campus activities were taking place because of the COVID-19 pandemic, this frustrated an essential purpose of the Class members' contracts with Defendant. Indeed, the very purpose of the Class members' contracts with Defendant was to allow the student Class members to attend school on university campuses, which was of course not possible due to the closure of the university campuses.

62. Defendant has been provided with ample notice of the Class members' desire for rescission. Indeed, not only did the Plaintiffs provide individual notice, but, as noted above, so

many Class members contacted Defendant that it engaged in mass communications with Class members to present its position that no rescission would be permitted. Additionally, the Defendant was put on notice by the governor, the President and the University of Central Florida.

63. This case is suitable for rescission because the parties can be equitably restored to their original position or, if that result would not be equitable, a balance of equities can otherwise be achieved.

64. This count for rescission is pleaded in the alternative to any claim for legal relief. To the extent no remedy at law is available, rescission is appropriate.

## COUNT II
## BREACH OF CONTRACT

65. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-49 of this Complaint.

66. The lease agreement provided that each Plaintiff ". . . a non-exclusive license to use all driveways, walkways, hallways, landscaped areas, and other common areas of the Apartment Community (the "Common Areas"); such usage to be in common with other residents in the Apartment Community and their respective guests, invites, and licensees."

67. The Defendants have breached the contract because they are unable to safely provide these services and amenities.

## COUNT III
## BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING

68. Plaintiff hereby incorporates by reference the allegations contained in 1-49 of this Complaint.

69. Plaintiff bring this claim on their own behalves and on behalf of the proposed Class against Defendant.

70.   In performing its leases with Plaintiff and the Class members, Defendant has breached the implied covenant of good faith and fair dealing by:

    a.   Unfairly and in bad faith asserting that remaining in shared space is a reasonable option for Plaintiffs and proposed Class members.  Dormitories, whether on or off campus, are not designed to safely house students in the event of a pandemic, and, in order to stay safe, a vast majority of the students must move out in order to practice safe social distancing in accordance with CDC recommendations.

    b.   Unfairly and in bad faith representing that its properties serve as a preferred student living community and provide residence life programs to compliment students' academics.  However, once the schools have closed and the students it purports to serve have been forced to leave, the reality reveals itself that Defendant does not consider its provision of room, board, and services to be tied whatsoever to the schools or to the students' academics, as it has failed to refund unearned payments for room, board, and fees.

    c.   Unfairly and in bad faith failing to refund any monies paid by the Plaintiffs and proposed Class that remain unused as a result of the COVID-19 pandemic.

71.   As a result of Defendant's breach of the implied covenant of good faith and fair dealing as set forth above, Plaintiff and the proposed Class members have been damaged.

## COUNT IV
## UNJUST ENRICHMENT

72.   Plaintiff hereby incorporates by reference the allegations contained in 1-49 of this Complaint.

73. Plaintiff brings this on her own behalf and on behalf of the proposed Class against Defendant.

74. Plaintiff and members of the Class conferred benefits on Defendant by paying room, board, and fees, despite the closing of colleges and universities and attendant recommendations for social distancing and returning home.

75. Defendant has knowledge of such benefits.

76. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' payments. Retention of those moneys under these circumstances is unjust and inequitable because Defendant is charging its customers full price of a semester's worth of room, board, and fees of which Plaintiff and Class members cannot reasonably avail themselves.

77. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT V
## CONVERSION

78. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-49 of this Complaint.

79. Plaintiff bring this claim on their own behalves and on behalf of the proposed Class against Defendant.

80. Defendant deprived Plaintiff and the other members of the Class of the value they paid for themselves (or the students on whose behalf they paid for) of their right to the services and amenities provided in the lease agreement.

81. Plaintiff and members of the Class had a right to a refund of their room, board, and fees while the schools the dormitories catered to were and remain closed; Defendant intentionally

refused issuance of any refund or credit after the schools were closed; Plaintiff and Class members were harmed through Defendant's unlawful retention of room, board, and fees; Defendant's conduct was a substantial factor in causing Plaintiff and Class members' harm.

82. Plaintiff and members of the Class are entitled to the return of the prorated, unused amounts paid for room, board, and fees through the end of the semester.

## COUNT VI
## MONEY HAD AND RECEIVED

83. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-49 of this Complaint.

84. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

85. Defendant received money in the form of room, board, and fee payments that was intended to be used for the benefit of Plaintiff and the Class; however, those fees were not used for the benefit of Plaintiff and the Class, and Defendant has not given back or refunded the wrongfully obtained money and fees to Plaintiff and the Class.

## COUNT VII
## FLORIDA CONSUMER COLLECTION PRACTICES ACT

86. Plaintiff hereby incorporate by reference the allegations contained in paragraphs 1 – 49 of this Complaint.

87. Plaintiff brings this claim on her own behalf and on behalf of the proposed Class against Defendant.

88. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

89. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which could reasonably be expected to abuse or harass the debtor Plaintiff or any member of her family, or willfully engage in other conduct which can be reasonably be expected to abuse or harass the debtor or any member of her or his family.

90. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate, or to assert the existence of some legal right when Defendant knows that right does not exist.

91. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

## **Prayer for Relief**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class members;

b. For an Order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. For an Order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For statutory, compensatory and punitive damages in amounts to be determined;

e. For prejudgment interest on all amounts awarded;

f. For an Order of restitution and all other forms of equitable monetary relief;

  g.  For injunctive relief as pleaded or as the Court may deem proper; and

  h.  For a declaration that the housing contract and agreements between Defendant and Plaintiff and the Class are unenforceable; and

  i.  For an Order awarding Plaintiff and the Class their reasonable attorneys' fees, litigation expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
Heather H. Jones, Esquire
Florida Bar No. 0118974
Amanda J. Allen, Esquire
Florida Bar No. 0098228
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Heather@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

John W. Barrett (pending *pro hac vice* admission)
Raymond S. Franks, II (pending *pro hac vice* admission)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
JBarrett@baileyglasser.com
RFranks@baileyglasser.com

***Attorneys for Plaintiff***